### Ex parte MASON.[1]

(Circuit Court, N. D. New York. October 2, 1882.)

1. COURTS ⊙⟶96(1)—BINDING EFFECT OF SUPREME COURT DECISION.

The Circuit Court is concluded by the decision of the Supreme Court that petitioner's offense was against military discipline and properly cognizable by court-martial.

2. WAR ⊙⟶32—COURT-MARTIAL—VALIDITY—JUDGE ADVOCATE GENERAL'S OPINION.

Advisory report of Judge Advocate General to Secretary of War, giving opinion on the merits of a trial and sentence by court-martial, to the effect that court-martial was without jurisdiction, and that there was no evidence of guilt, held not a reversal, nor to purport to be such.

3. WAR ⊙⟶32—COURT-MARTIAL—REVERSAL BY JUDGE ADVOCATE GENERAL— "REVISE."

Rev. St. § 1199, making it the duty of the Judge Advocate General to "receive, revise and cause to be recorded" the proceedings of all courts-martial, implies no authority to reverse; the word "revise," under the rule of noscitur a sociis, imposing a duty analogous to that of receiving and recording the proceedings.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Revise.]

---

⊙⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] Published by request.

Petition by John Anderson Mason for writ of habeas corpus. Rule discharged and application denied.

This proceeding came on for hearing under a rule to show cause why an application for a writ of habeas corpus should not be granted on behalf of John Anderson Mason, the petitioner, late sergeant, Battery B, Second Artillery, confined in the Albany Penitentiary, under sentence of a general court-martial, for a violation of the Sixty-Second Article of War.

The petitioner, as appeared from his sworn petition, was a sergeant in Battery B, Second Regiment, United States Artillery, and stationed on the 11th day of September, 1881, at Washington Barracks, District of Columbia, from whence he was sent with his battery, under the orders of the Secretary of War, to the United States jail in the District of Columbia, for guard duty.

Having arrived there for said duty, on said day, it was thereafter alleged that he then and there violated the Sixty-Second Article of War (section 1342, Rev. Stat.), in that he did thereupon, with intent to kill Charles J. Guiteau, a prisoner then confined under the authority of the United States, in said jail willfully and feloniously discharge his musket, loaded with ball cartridge, at said Guiteau, through the window of said jail, into the cell then occupied by the said Guiteau.

For this alleged crime the petitioner was duly tried, convicted, and sentenced by a general court-martial, appointed under the seventy-second Article of War by Maj. Gen. Winfield S. Hancock, commanding the military geographical Department of the East, who subsequently approved the proceedings, findings, and sentence of said court (Articles of War 106, 109) and, subject to the approval of the Secretary of War, designated the Albany Penitentiary as the place of confinement, which place, thus designated, was duly approved by the Secretary of War, and the sentence ordered to be carried into execution.

The principal and only material points which the petitioner urged in his petition against the validity of his conviction and sentence, and service in execution thereof, were as follows:

First. That the order of the Secretary of War, directing said guard duty at a jail "belonging to the civil department of the government," was null and void, because it was issued without an application therefor from the "executive authority of the District of Columbia," and that there were no "army stores, nor was there any army property of any class, character, or description at the jail or in its vicinity to be guarded."

Second. That such employment of Battery B, Second Artillery, and of the petitioner, was prohibited by section 15 of the act of Congress of June 18, 1878 (20 Stat. 152, c. 263), commonly known as the Posse Comitatus Act.

Third. That the crime charged against the petitioner involved merely a breach of the civil peace, and in no way affected the discipline of the army, and, if committed at all, was not committed by the petitioner in the discharge of his military functions, or of any military duty, nor was it committed by him at any military camp, post, or garrison, nor against the person of a soldier in the army, but against a civilian in a place exclusively under civil jurisdiction, and over which and whom no military authority could be rightfully or lawfully exercised.

That consequently the alleged crime was not triable in time of peace under the sixty-second Article of War, and that it has been so ruled in this country from the foundation of the government, and in England for more than 150 years, and that the general court-martial was without jurisdiction and the petitioner's imprisonment is unlawful.

Fourth. That only those offenses which are to the prejudice of good order and military discipline, and not mentioned or provided for in the other Articles of War, are triable under the sixty-second Article, and that the crime of an assault with intent to kill a citizen is provided for in the fifty-ninth Article of War, and, on this account, conviction under the sixty-second Article is unlawful.

Fifth. That the Judge Advocate General of the army recently reviewed the evidence adduced on the trial before the said general court-martial, and on or about August 28, 1882, transmitted to the Secretary of War his report on the

said proceedings, in which he renders an opinion reversing the findings and sentence of said court on the grounds:

"(1) That the court-martial had no jurisdiction to try the petitioner, because the alleged offense was not committed by him while in the discharge of his military duty, nor at any military camp, garrison, barracks, or post, nor against the person of a party under military authority or control, but at a place exclusively under the civil authorities of the government, and was therefore merely a breach of the civil peace.

"(2) That the employment of Battery B, Second Artillery, to guard the said jail, was prohibited by the act of Congress of June 18, 1878 (Posse Comitatus Act).

"(3) That there was no evidence adduced at the trial showing the petitioner guilty of the charge and specification, but that the record of the testimony clearly establishes his innocence."

Sixth. That under section 1199, Revised Statutes, it is the duty of the Judge Advocate General to "receive, revise and cause to be recorded the proceedings of all courts-martial," and that it was the intention of Congress thereby to invest in the Judge Advocate General an appellate judicial authority over courts-martial, and that the Judge Advocate General has the judicial power, under the law, to review, revise, reverse, or affirm the findings and sentences of all courts-martial, and that his decision is the ultimate judicial judgment in all such cases.

That by the judgment and decision of the Judge Advocate General, rendered as aforesaid, reversing the findings and sentence of the said court-martial, the further imprisonment of the petitioner is unlawful and wrongful.

Further, that his conviction and sentence, and the orders carrying the same into execution, are each and all annulled and made to stand for naught by the said judicial judgment and decision of the Judge Advocate General, reversing the findings and sentence of the said court-martial.

Two depositions were introduced by respondents—one made by First Lieut. Edward T. Brown, Fifth Artillery, late Judge Advocate of the general court-martial, to show that evidence has been taken as to the petitioner's guilt; the other by John Tweedale, Esq., chief clerk of the War Department, as to reports received from the Bureau of Military Justice.

The opinion of the Supreme Court of the United States, filed May 8, 1882, on a previous application of petitioner to that court, for writs of habeas corpus and certiorari, was also introduced. Ex parte Mason, 105 U. S. 696, 26 L. Ed. 1213.

Incidentally during the hearing the court decided:

First. That the Judge Advocate General's report on the general court-martial proceedings was a "privileged" communication, and, although petitioner's counsel had given the respondents due notice to produce it, they were not bound to do so.

A certified copy was, however, subsequently voluntarily introduced by the respondents.

Second. That the duly certified copy of the original record of the general court-martial proceedings in petitioner's case, offered in evidence by the petitioner's counsel, was inadmissible, under objection, and therefore excluded, as the court could not enter into a review of the case.

General J. G. Bigelow, of Washington, D. C., for petitioner.

Asa Bird Gardner, Judge Advocate, U. S. Army, for Superintendent Albany Penitentiary, and, by designation of the United States Attorney General, for the United States.

Martin I. Townsend, Dist. Atty., for the United States.

Before WALLACE, Circuit Judge, and COXE, District Judge.

WALLACE, Circuit Judge. The petition for the writ proceeds upon two grounds: First, that the general court-martial was without jurisdiction to try the petitioner, Mason, for the offense of which he

was convicted, such offense being a breach of the civil peace, and not a military offense, and the sentence of the court being therefore void; and, second, that the Judge Advocate General has reversed that sentence, thereby nullifying the conviction of the court-martial.

[1] As to the first branch of the application we are concluded by the decision of the Supreme Court of the United States, which, by the unanimous opinion of the court, adjudged Mason's offense to be one against military discipline, and properly cognizable by court-martial.

That decision is of controlling authority, and disposes of the first ground of the application adversely to the petitioner.

[2, 3] The second ground of the application is not tenable, because the alleged reversal by the Judge Advocate General of the findings of the court-martial is not a reversal at all, and does not purport to be. It is merely an advisory report to the Secretary of War, giving the opinion of the Judge Advocate General upon the merits of the trial and sentence. We might rest our decision here, but, as it has been strenuously contended by the counsel for the petitioner that Congress has conferred authority upon the Judge Advocate General to reverse the proceedings of courts-martial, it is proper that we should express our dissent from such a conclusion. It is urged that, because the statute makes it the duty of that officer to "receive, revise and cause to be recorded the proceedings of all courts-martial," the power to reverse is to be implied. It is not reasonable to suppose that the exercise of such an important power would be conferred in vague and doubtful terms, or that it lurks behind the word "revise." Applying the rule "noscitur a sociis," the word "revise" is to be read in connection with the words that precede and follow it, and, thus read, the duty it imposes is analogous to the duty of receiving and recording the proceedings. Had it been intended by the statute to introduce such a marked innovation into the pre-existing functions of that officer, and to convert a staff officer or the head of a bureau into a judicial officer having the ultimate decision in all cases of military offenses the power to affirm, reverse, or modify the proceedings of courts-martial would have been lodged in plain and explicit language. The language employed is more appropriate to indicate the discharge of clerical duties.

It is not intended to intimate that it is not the province and the duty of the Judge Advocate General to revise the proceedings of courts-martial so far as may be necessary to rectify errors of form, and to point out errors of substance which, in his judgment, should be corrected by the proper authorities, nor is it doubted that, as to all such topics as are within the purview of his official scrutiny, his opinion is entitled to that respectful consideration which is due to the dignity and importance of the position which he holds.

The rule is discharged, and the application for a writ of habeas corpus is denied.